IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DAVID ALLEN NESBITT,
    Plaintiff,

vs.                                                Case No: 5:05cv252/MCR/EMT

JAMES A. BARNES, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's second amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 12).  Leave to proceed in forma pauperis has been granted (Doc. 5).

Because Plaintiff is proceeding in forma pauperis, the court is required to dismiss the case at any time if it determines that the "action or appeal" is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.A. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.* at 327, 109 S. Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  The complaint may be dismissed only if it appears beyond doubt that

Plaintiff can prove no set of facts that would entitle him to relief. Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923 (11th Cir. 1997). Upon review of the complaint, this court concludes that dismissal of this action is warranted.

Plaintiff names two Defendants in this action: James A. Barnes, a Captain at Washington County Jail (WCJ), and Mr. Peña, a Lieutenant at WCJ (Doc. 12 at 1–2).

Plaintiff states that he was transferred to WCJ on October 4, 2004, and immediately upon his arrival, he was placed in A-Pod, the administrative detention pod "generally reserved for the most violent and unruly inmates in that jail" (*id.* at 3). Plaintiff asserts that he was placed in A-Pod despite the "lack of any history of violence in Plaintiff's past" and despite Plaintiff's request to be placed in protective custody (*id.*). For the first thirty days of his confinement at WCJ, Plaintiff was "locked down and denied access to a telephone," paper, and pencils; as a result, he was unable to notify his attorney or family of his new location (*id.* at 3–3A).

While incarcerated in the WCJ, Plaintiff claims he was denied access to the courts (*id*. at 3A–3C). Despite many requests for access and complaints to the jail staff, Plaintiff states that Defendants denied him access to the law library (*id* at 3B). Next, Plaintiff states that his personal papers were taken, because he was told that inmates were not allowed more than fifteen sheets of paper, and he was not given "indigent packs" of paper, envelopes, and pens (*id.* at 3A). Additionally, because Plaintiff did not have telephone or mail access, he could not prepare court filings or contact his attorney to review filings prepared by that attorney (*id.*). Plaintiff alleges that the denial of mail and telephone access resulted in "delayed and/or destroyed filings seeking injunctive relief" in federal court, and in state court matters it resulted in "Plaintiff spending approximately three years in various county jails as a pre-trial detainee" (*id.* at 3B). Finally, Plaintiff states that he was denied access to a photocopy service (*id.*). Plaintiff alleges that the denial of a photocopying service caused his pleadings to be out of conformance with court rules regarding numbers of copies and service, which "caused rejection of certain pleadings and prejudicial delays in others" (*id.*).

Next, Plaintiff claims that he was treated differently from some black inmates. Specifically, Plaintiff alleges that Defendants made "special arrangements for at least one black inmate" to use the law library (*id.* at 3B); that Plaintiff "personally observed other inmates, specifically black

inmates, who had several hundred sheets of paper" (*id.* at 3A); and, that Plaintiff "personally observed that black inmates in A-pod were routinely allowed all of the photocopying service they requested concerning their legal pleadings" (*id.* at 3B).

Additionally, Plaintiff alleges that he was denied access to proper medical care at WCJ (*id.* at 3C). Plaintiff states that he suffered from serious cardiovascular disease and inflammatory rheumatoid arthritis for twenty-five years prior to his arrest, that it was "readily apparent that Plaintiff suffered from a life-threatening condition as well as an acutely painful degenerative disease," and that the number of medications Plaintiff was prescribed "should have been enough to alert any reasonable person that the Plaintiff was not well and required medical attention above the norm" (*id.* at 3C–3D). Despite numerous requests, and despite "orders prepared by the HCJ medical staff," Defendants Barnes and Peña denied Plaintiff the use of a second mattress "so that his sleep would be interrupted by pain less often" (*id.* at 3D). Defendants told Plaintiff that they did not have enough additional mats to give him an extra one, but Plaintiff states that he observed other inmates with two or three mattresses and also saw a stack of many mats in a room next to the law library (*id.*).

For eighteen weeks of his incarceration in the WCJ, Plaintiff suffered from a skin condition involving "cracks and lesions" at the corners of his mouth (*id.* at 3E). At any one time, Plaintiff states that he had between six and twelve of these lesions, which were between one-sixteenth and one-eighth inch deep, and between one-eighth and one-half inch long (*id.*). The lesions bled, swelled, and became infected (*id.*). Nurse Hazzell immediately scheduled Plaintiff to see the WCJ doctor, Doctor Ward, who was "unable to diagnose the skin condition," but recommended that "Plaintiff be transported to see a dermatologist for treatment" (*id.*). Although Nurse Hazzell related the doctor's orders to Defendants Barnes and Peña, they denied Plaintiff the medical care (*id.*). Nurse Hazzell then attempted to get authorization for Plaintiff's care from other officials, who also denied Plaintiff the trip to the dermatologist (*id.*). Plaintiff states that this created a serious medical situation for him, because infections are potentially fatal to patients with heart disease, and antibiotic-resistant staphylococcus infections are rampant in jails (*id.* at 3F). Because of the lesions, Plaintiff was "unable to ingest and masticate most solid foods," and he was forced to subsist predominately on liquids for eighteen weeks (*id.*). As a result, Plaintiff lost forty points, and he

alleges that "[s]udden and dramatic weight loss in cardiac patients is stressful to the heart and may also have fatal results" (*id.*).

Plaintiff alleges that because "the abuses described [in his complaint] were uniformly applied without respect to which CO was on duty at the time . . . it was apparent that the COs were implementing orders from the Defendants, that they were serving an insular capacity by keeping Plaintiff's complaints away from the Defendants and were also serving as a conduit for information" (*id.* at 3F–3G). Plaintiff alleges that the COs "repeatedly told Plaintiff that they were barred from performing the normal, necessary and lawful requests made of them by the Plaintiff and that the denials came directly from either [Defendant]" (*id.* at 3G).

In conclusion, Plaintiff claims Defendants Barnes and Peña violated his due process rights under the Fourteenth Amendment by violating Plaintiff's right to freedom of speech, by failing to provide Plaintiff access to the courts, by violating Plaintiff's Equal Protection rights, and by denying appropriate medical care (*id.* at 4–4A). As relief, Plaintiff seeks compensatory damages in the amount of $2,000,000.00 and punitive damages in the amount of $8,000,000.00 (*id.* at 4).

Initially, to the extent Plaintiff's claims are covered by specific constitutional provisions, he cannot state a due process violation. If a constitutional claim is covered by a specific constitutional provision, such as the First Amendment or the Equal Protection Clause, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See* County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998) (citations omitted). Thus, substantive due process analysis is inappropriate if Plaintiff's claims are covered by another constitutional amendment. *Id.* In the instant case, some of Plaintiff's claims are covered by specific constitutional provisions. Therefore, where appropriate his claims will be analyzed under those provisions.

Regarding Plaintiff's First Amendment claims, Plaintiff alleges that during his first thirty days at WCJ, he was "locked down" in administrative detention and was denied all access to a telephone, paper, and pencils. Specifically, Plaintiff states that during this time, his personal property (including paper and pencils) was taken from him, he was not allowed to use the telephone, and he was not given "indigent packs." Initially, Plaintiff has not alleged that Defendant Barnes or Peña were directly responsible for the denial of Plaintiff's access to a phone and writing materials.

The only connection Plaintiff makes between Defendants Barnes and Peña and the alleged freedom of speech violation is at the end of Plaintiff's statement of facts, where he alleges, generally, that "[s]ince the abuses described . . . were uniformly applied without respect to which CO was on duty at the time . . . it was apparent that the COs were implementing orders from the Defendants." These conclusory and speculative allegations, without any supporting facts, are insufficient to establish that the correctional officers were indeed following orders of the Defendants.

To the extent Plaintiff seeks to hold both Defendants liable on a respondeat superior theory of liability, Plaintiff has failed to state a claim. As Plaintiff was previously advised (*see* Doc. 8), "It is well established that supervisory officials are not liable under [section] 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Supervisory liability may occur, however, "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or "when a supervisor's custom or policy result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation marks and citations omitted); *see* Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisor does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of

repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)).

Other than Plaintiff's conclusory and speculative assertions, Plaintiff has not alleged that Defendants knew of or caused his placement in lock-down or that Defendants knew of or caused the denial of Plaintiff's access to communication while he was in lock-down. In fact, Plaintiff states that the guards on duty "were serving an insular capacity by keeping Plaintiff's complaints away from the Defendants" (Doc. 12 at 3G) (emphasis added). Moreover, Plaintiff has not alleged a history of widespread violation of inmates' First Amendment rights in WCJ, and the facts do not support the inference that Defendant Barnes or Defendant Peña directed the other guards to act unlawfully or knew the guards were acting unlawfully but failed to stop them from doing so. Specifically, Plaintiff has not alleged that it was the general policy to deny an inmate in lock-down access to all paper and telephone use; rather he has alleged only that his personal property was withheld, and that he was denied "indigent packs," causing Plaintiff's "effective[] isolat[ion]." Thus, Plaintiff has failed to state a claim against the named Defendants.[1]

Next, Plaintiff has failed to state a claim for denial of access to the courts. It is settled law that interference with an inmate's access to the courts is a violation of a First Amendment right actionable under section 1983. Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991). However, while there should be no interference or undue delay in the delivery of inmates' legal mail by prison officials, courts have held that without explicit proof of damages, occasional interference with inmate mail or violations of mail regulations in a prison

---

[1] Even if Plaintiff had sufficiently alleged a connection between Defendants and the alleged freedom of speech violation, it is far from clear that Plaintiff could show a First Amendment violation. *See* Beard v. Banks, 126 S. Ct. 2572 (2006) (finding no freedom of speech violation where, for at least ninety days and sometimes indefinitely, prisoners were in solitary confinement for twenty-three hours a day, were allowed only one visitor a month, were prohibited from watching television or listening to the radio, and were prohibited phone calls except in emergencies).

Case No: 5:05cv252/MCR/EMT

do not state a claim of denial of access to courts under section 1983. *See* Gramegna v. Johnson, 846 F.2d 675, 677 (11th Cir. 1988); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304, 306 (7th Cir. 1993); Morgan v. Montanye, 516 F.2d 1367, 1371–72 (2d Cir. 1975); Woods v. Yeager, 463 F.2d 223, 224–25 (3d Cir. 1972). Additionally, the right to access the courts does not require "that prison officials provide a prisoner with free, unlimited access to photocopies." Logue v. Chatham County Det. Ctr., 152 F. App'x 781, 784 (11th Cir. 2005) (per curiam) (citing Wanninger v. Davenport, 697 F.2d 992, 994 (11th Cir. 1983)). Furthermore, while it entitles indigent prisoners "to some free stamps," the right to access the courts does not require prison officials to provide "unlimited free postage." Van Poyck v. Singletary, 106 F.3d 1558, 1559 (11th Cir. 1997) (per curiam) (quoting Hoppins v. Wallace, 751 F.2d 1161, 1162 (11th Cir. 1985)).

As established in Lewis, to successfully allege a constitutional violation based upon denial of access to courts, Plaintiff must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved. 518 U.S. at 349–50. The type of prejudice that is deficient in the constitutional sense is that which hinders the inmate's ability to actually proceed with his claim; there is no constitutional mandate "to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court." *Id.* at 354. Importantly, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* Plaintiff must show that he was prejudiced in a criminal appeal or post-conviction matter, or in a civil rights action seeking "to vindicate 'basic constitutional rights.'" *Id.* at 354–55 (quoting Wolff v. McDonnell, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). Furthermore, he must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of Defendants' actions. Wilson v. Blankenship, 163 F.3d 1284, 1290–91 (11th Cir. 1998) (citing Lewis); *see also* Bass v. Singletary, 143 F.3d 1442, 1445–46 (11th Cir. 1998). So long as Plaintiff was able to litigate his claim, he cannot demonstrate that he was unconstitutionally denied access to the courts. Wilson, 163 F.3d at 1291. Moreover, Plaintiff cannot show an injury unless he shows that the case he was unable to pursue had arguable merit. Lewis, 518 U.S. at 353 n.3; Wilson, 163 F.3d at 1291.

In the instant case, Plaintiff's allegations are insufficient to state a claim for denial of access to the courts. Plaintiff has alleged that he was denied access to the law library, to indigent packs, to telephone and mail service, and to a photocopying service. Initially, because Plaintiff was a pre-

trial detainee during the time at issue, his state court litigation is not constitutionally protected, as it was not a criminal appeal or post-conviction matter.[2] Therefore, the court will focus on Plaintiff's federal litigation. Plaintiff alleges that denial of mail and telephone access resulted in "delayed and/or destroyed filings seeking injunctive relief" in federal court and that the denial of photocopying service "caused rejection of certain pleadings and prejudicial delays in others." First, Plaintiff has again failed to allege any specific facts connecting either Defendant Barnes or Defendant Peña to the denial of Plaintiff's mail and telephone access while he was in lock-down or to the denial of photocopying services and indigent packets, and Plaintiff cannot hold either Defendant liable on a theory of respondeat superior. As discussed above in the freedom of speech context, Plaintiff has not alleged with specificity that either Defendant knew of or caused these denials, or that either Defendant knew of a history of widespread abuse.

Plaintiff does allege that Defendants Barnes and Peña specifically denied him access to the law library,[3] but Plaintiff's allegations of injury are insufficient to state a claim. First, Plaintiff has not specified which federal cases were prejudiced or that Plaintiff was unable to proceed with any of his claims. Next, Plaintiff has not alleged denial or dismissal of any of his claims resulting from the alleged constitutional violation. Finally, Plaintiff has not shown or alleged that any of his delayed or destroyed filings had arguable merit. Therefore, Plaintiff's claim that Defendants denied him access to courts in violation of the First Amendment is subject to dismissal.

Plaintiff has also failed to state an equal protection violation. The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *See* Cleburne v.

---

[2] Plaintiff alleges that "because of difficulties in obtaining and keeping the services of an attorney, Plaintiff alternated between being represented by counsel and making 'pro se' filings. Both situations created the need for the Plaintiff to have either telephone or mail access so that he could either prepare court filings, or contact his attorney so [his proposed state court filings] could be reviewed and/or prepared by that attorney" (Doc. 12 at 3A). He further alleges that the denial resulted in Plaintiff spending approximately three years in various county jails as a pre-trial detainee (*id.* at 3B). However, Plaintiff was an inmate of the WCJ for less than six months (*see id.*; Doc. 7 at 3B). Moreover, an extended period of time in pre-trial custody does not establish that Plaintiff was prejudiced in the presentation of the defense of his criminal case. Indeed, Plaintiff had more time than most defendants to prepare for trial, and most of that time was spent in "various county jails," not the WCJ. Finally, during the times Plaintiff was represented by an attorney, the attorney was responsible for preparing and filing pleadings on Plaintiff's behalf.

[3] Interestingly, in an earlier sworn complaint, Plaintiff alleged that Defendant Barnes granted Plaintiff one hour of law library access, but the visit was not permitted by other correctional officers (*see* Doc. 7 at 3D, 4).

Case No: 5:05cv252/MCR/EMT

Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest," such as race, gender, or religion. Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotation marks omitted). Thus, in order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). "Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the Plaintiff." GJR Inv., Inc. v. Escambia, 132 F.3d 1359, 1367–68 (11th Cir. 1998).

Plaintiff must also allege Defendants acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). There must be intentional discrimination: "[m]ere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." Realty, 830 F.2d at 1114. "'Discriminatory purpose' implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of' its adverse effects upon an identifiable group." *Id.* (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979) (omission in original)). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR, 132 F.3d at 1367–68 (finding that allegations that defendants' actions were "arbitrary and capricious in that [they] acted with an improper motive, without reason, or upon a reason that was merely pretextual" were insufficient to state a claim); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In the instant case, Plaintiff alleges that he was treated differently from black inmates when he was denied photocopying services, paper, and access to the law library. At the end of Plaintiff's statement of claims, he contends that "Defendants treated Plaintiff differently than other inmates

similarly situated, in violation of Equal Protection" (Doc. 12 at 4A). Initially, as established above, Plaintiff has not alleged any facts connecting either Defendant Barnes or Defendant Peña to the denial of paper or photocopying services, and Plaintiff cannot hold either Defendant liable on a theory of respondeat superior. Thus, Plaintiff cannot state an Equal Protection claim against Defendants on these two grounds, because Plaintiff has not specifically alleged that Defendants treated him differently or that they did so with a discriminatory intent.

Regarding Plaintiff's final Equal Protection claim, he does specifically allege that Defendants made special arrangements "for at least one black inmate" to use the law library while denying Plaintiff access. However, this allegation is insufficient to state an Equal Protection violation for at least two reasons. One, Plaintiff has not alleged that the "one black inmate" was "similarly situated" to Plaintiff. The only detail Plaintiff provides about the other inmate is that he was Plaintiff's cellmate for a "brief" period during the fifth month of Plaintiff's stay (Doc. 12 at 3B). This is insufficient to show that Plaintiff and the "one black inmate" were similarly situated. Plaintiff has not alleged that he and the "one black inmate" were subject to the same disciplinary conditions, that they had the same needs, or even that they were roommates during the period Defendants made special arrangements for the other inmate to use the library. Two, Plaintiff has not alleged that Defendants acted with discriminatory intent in denying Plaintiff access to the library while providing access to "at least one black inmate." Indeed, this incident does not even raise an inference of discriminatory intent, because there are many reasons besides race that Defendants may have granted access to the library to one inmate while refusing it to one other inmate. Plaintiff has not alleged that Defendants treated *all* white inmates differently; in fact he states that "other inmates" (presumably including white inmates) had "unlimited access" to the library. Finally, Plaintiff's conclusory assertion that Defendants treated him differently than other inmates "in violation of Equal Protection" is insufficient to salvage Plaintiff's Equal Protection claim. Nowhere in Plaintiff's complaint has he alleged that Defendants denied him access to the law library *because of* his race. Therefore, Plaintiff's Equal Protection claim is subject to dismissal.

Case No: 5:05cv252/MCR/EMT

Finally, Plaintiff's allegations that Defendants failed to provide him an extra mat and adequate medical treatment are insufficient to state a Fourteenth Amendment claim.[4] The Eighth Amendment "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.'" Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1988)). "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" Chandler v. Crosby, 379 F.3d 1278, 1288–89 (11th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981)). Prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain. *Id.*; Hope v. Pelzer, 536 U.S. 730, 737, 122 S. Ct. 2508, 2514, 153 L. Ed. 2d 666 (2002); Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003); Campbell, 169 F.3d at 1362. To establish "unnecessary and wanton infliction of pain," Plaintiff is required to show "that officials acted with specific intent." *Id.* "[T]he exact nature of the specific intent required depends on the type of claim at issue." *Id.* at 1363.

Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment. *Id.*

---

[4] Plaintiff was a pretrial detainee at all times relevant to this action. As such, his claims of cruel and unusual punishment sound properly in the Fourteenth Amendment right to due process of law rather than in the Eighth Amendment. *See* Taylor v. Adams, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000) (citing Lancaster v. Monroe County, Alabama, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997)). Nevertheless, his claims regarding the conditions of his confinement and failure to provide medical care are analyzed in identical fashion regardless of whether they arise under the Due Process Clause or the Cruel and Unusual Punishment Clause. *See id.* This court thus looks to those cases specifying the contours of an Eighth Amendment deliberate-indifference claim to determine the elements Plaintiff must satisfy in this case.

To state an Eighth Amendment violation, a prisoner must satisfy both an objective and a subjective inquiry. Chandler, 379 F.3d at 1289–90; Farrow, 320 F.3d at 1243. Under the objective component, a prisoner must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). Specifically, a prisoner must prove a "serious medical need" or the denial of "the minimal civilized measure of life's necessities." Chandler, 379 F.3d at 1289–90; Farrow, 320 F.3d at 1243; Rhodes, 452 U.S. at 347. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope, 536 U.S. 730 (2002); *see also* Farmer v. Brennan, 511 U.S. 825, 834,114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995). For a claim based on prison conditions, "[t]he challenged prison condition must be 'extreme'" and must pose "an unreasonable risk of serious damage to [a plaintiff's] future health or safety." Chandler, 379 F.3d at 1289–90 (quoting Hudson, 503 U.S. at 9) (other citation omitted).

Under the subjective component, the prisoner must prove that the prison official acted with "deliberate indifference." Farmer, 511 U.S. at 837 (stating that an individual may be held liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"), Hudson, 503 U.S. at 8, Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). To prove deliberate indifference, the prisoner must show that the defendant prison official "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition or serious medical need in issue. Chandler, 379 F.3d at 1289–90 (quoting Hudson, 503 U.S. at 8). Negligence

or even gross negligence does not satisfy this standard. *Id.*; Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

In the instant case, Plaintiff failed to allege sufficient facts showing that the denial of the extra mat was so "extreme" as to pose an unreasonable risk of serious damage to his future health. In fact, although Plaintiff alleges that he suffered pain from being denied an extra mattress, he alleges no damage to his health resulting from the denial. Nor does Plaintiff allege that either Defendant knew of and disregarded an excessive risk to Plaintiff's health or safety if he was not allowed an additional mattress.

Additionally, Plaintiff has failed to state a claim based on his allegedly inadequate treatment for his lesions. Regarding the objective component, Plaintiff fails to allege sufficient facts to show that his skin condition was a "serious medical need": Plaintiff admits that no doctor had diagnosed his condition and the small lesions Plaintiff has described are not so obviously a serious danger to Plaintiff's health that even a lay person would recognize the need for a doctor's attention. Plaintiff also admits that other prison officials similarly denied authorization for Plaintiff to travel to see a dermatologist. This fact suggests that none of the officials believed Plaintiff's condition was very serious. Moreover, Plaintiff has not alleged any serious damage[5] to his health resulting from the failure to see a dermatologist. Regarding the subjective component, Plaintiff has not established that Defendants knew his skin condition created a risk of serious harm or that their disregard of the risk was more than negligent. Specifically, Plaintiff has not alleged that Defendants knew either that the lesions were causing Plaintiff's weight loss or that his weight loss was dangerous. Rather, Plaintiff

---

[5]Plaintiff alleges pain, weight loss, and "risk" of harm resulting from the lesions, but he does not state that any harm to his health actually occurred.
Case No: 5:05cv252/MCR/EMT

presents only attenuated inferences and speculation that Defendants acted with deliberate indifference to his health. This is insufficient to show "deliberate indifference," as it is defined by Eighth Amendment jurisprudence, or to state a claim. Thus, both of Plaintiff's inadequate medical treatment claims are subject to dismissal.

Accordingly, it is respectfully **RECOMMENDED**:

That Plaintiff's claim be **DISMISSED** as frivolous pursuant to 28 U.S.C.A. § 1915(e)(2)(B).

At Pensacola, Florida this 29th day of September 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**